UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In Re:

    CAROLE F. SCHUMAN,                   Chapter 13
                                                    Case No.: 12-60675

                                      Debtor.

APPEARANCES:

L. DAVID ZUBE, ESQ.
*Attorney for Debtor*
50 Court Street – 4th Floor
Binghamton, New York 13901

MARK W. SWIMELAR, ESQ.                        MAXSEN D. CHAMPION, ESQ.
*Standing Chapter 13 Trustee*
250 South Clinton Street, Suite 203
Syracuse, New York 13202

TRACY HOPE DAVIS                                      GUY A. VAN BAALEN, ESQ.
*United States Trustee for Region 2*
Office of the United States Trustee
10 Broad Street, Room 105
Utica, New York 13501

Honorable Diane Davis, United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

      Before the Court is an Application for the Allowance of Compensation and Expenses ("Application," ECF No. 35) filed by L. David Zube, Esq. ("Attorney Zube"), Counsel to chapter 13 Debtor Carole F. Schuman ("Debtor"), on November 6, 2012. The Application seeks approval pursuant to 11 U.S.C. §§ 330 and 331[1] for an interim award of compensation of $9,898.10, which is comprised of fees of $9,652.50 and expenses of $245.60, for Attorney

---

[1] All further section references herein are to the United States Bankruptcy Code ("Code"), 11 U.S.C. §§ 101–1532 (2006).

Zube's representation of Debtor during the pre-confirmation period beginning on April 12, 2012, through November 5, 2012.

At the December 6, 2012 hearing on the Application, the Court expressed concern as to the reasonableness of the fees requested. Accordingly, the Court provided Attorney Zube with an opportunity to submit additional justification for the compensation requested prior to an adjourned hearing set for January 4, 2013. At the December hearing, the Court also requested that the Chapter 13 Trustee ("Trustee") and the Office of the United States Trustee ("United States Trustee") file position statements in response to the Application. On December 21, 2012, the Trustee filed an Affirmation in Response to the Application ("Trustee's Affirmation," ECF No. 40) indicating that the fees appeared appropriate based on the facts and circumstances of the case. On December 24, 2012, Attorney Zube filed a Supplement to the Application ("Supplemental Application," ECF No. 41) explaining in narrative form the bases for the fees requested. On January 3, 2013, the United States Trustee filed a statement ("United States Trustee's Statement," ECF No. 42) indicating that the Application and Supplemental Application (collectively, the "Application for Compensation") satisfied § 330 and warranted the fees requested in this case. The Court conducted a second adjourned hearing to address the Application for Compensation on February 7, 2013. Notwithstanding the lack of opposition to the Application for Compensation, the Court took the matter under advisement.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and (b). This is a core proceeding that the Court may hear and determine with finality under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

# FACTS

Attorney Zube filed an incomplete chapter 13 petition ("Petition," ECF No. 1)[2] on behalf of Debtor on April 15, 2012. On May 10, 2012, the Trustee filed a Notice and Motion for Conditional Order of Dismissal ("Dismissal Motion," ECF No. 11) due to Debtor's failure to file a chapter 13 plan, schedules, and other required documentation within fourteen days of the Petition date pursuant to Federal Rules of Bankruptcy Procedure 1007(b) and 3015(b). The Trustee noticed the Dismissal Motion for hearing on May 31, 2012. On May 23, 2012, Attorney Zube filed a Response to the Dismissal Motion on behalf of Debtor (ECF No. 12), therein advising that the case was filed under exigent circumstances to stay a pending foreclosure proceeding and, due to certain factual complications, requesting additional time to cure the filing deficiencies. The Court heard the Dismissal Motion on May 23, 2012, and entered a Conditional Order of Dismissal ("Conditional Order," ECF No. 14) on June 14, 2012.

Debtor responded to the Conditional Order by filing a Chapter 13 Plan ("Plan," ECF No. 17), schedules and, as needed, amended schedules (ECF No. 18), and a Statement of Financial Affairs ("SOFA," ECF No. 24) on July 28, 2012. On July 30, 2012, Debtor also filed Official Form 22C (ECF No. 26) titled "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income." On July 28, 2012, Debtor filed a Notice of Time Fixed for Filing Objections to and the Hearing to Consider Confirmation of Chapter 13 Plan Dated July 28, 2012, scheduling the confirmation hearing for August 30, 2012. The Trustee filed an Objection to Confirmation of the Plan on August 17, 2012 ("Objection," ECF No. 29), but he later withdrew that Objection by letter dated November 1, 2012 (ECF No. 32). On August 22, 2012, counsel for secured mortgagee Community Bank, N.A. ("Community

---

[2] Together with the Petition, Debtor filed Schedules D through F titled "Creditors Holding Secured Claims," "Creditors Holding Unsecured Priority Claims," and "Creditors Holding Unsecured Nonpriority Claims," respectively, and a Summary of Schedules.

Bank") filed Limited Objections to Debtor's Proposed Plan ("Limited Objection," ECF No. 30), requesting that confirmation of the Plan be denied on the ground that the Plan did not provide for full payment of its claims. On November 6, 2012, to address the Objection and Limited Objection, Debtor filed an Amended Chapter 13 Plan ("Amended Plan," ECF No. 33).[3]

Attorney Zube's formation of the Amended Plan necessarily factored in the following information from Debtor's Petition, schedules, and required case documents. Debtor filed the case as an individual but checked the box marked "Other" under the category "Nature of Business" on the Petition and listed "Moving Company; Farm." Debtor also indicated that her debts are primarily business debts. Her estimated liabilities range between $500,001.00 and $1 million. Debtor's Schedule J titled "Current Expenditures of Individual Debtor" reports monthly net income of $1,308.00. On her Summary of Schedules, Debtor valued her real property at $722,250.00 and her personal property at $59,931.00. Debtor's Summary of Schedules reveals approximately $68,000.00 in non-exempt equity.

On Schedule A titled "Real Property," Debtor listed four parcels of real property located in Oneonta, New York: (1) a business property located at 6473 State Highway 23 (the "Business Premises"), titled to Schuman B-Line Moving & Storage, Inc. ("Schuman Moving"), an active New York limited liability company of which Debtor and her non-filing spouse, Warren E. Schuman ("Warren"), are the sole shareholders; (2) a farm property located at 1305 Southside Drive (the "Farm Property"), owned jointly by Debtor and Warren; (3) her primary residence located at 52 Woodside Avenue (the "Residence"), owned jointly by Debtor and Warren; and (4) vacant acreage located at 159 River Street (the "Vacant Property"), owned jointly by Debtor and Warren. On her SOFA, Debtor listed the Business Premises as being subject to a pending

---

[3] Although the Amended Plan states that its purpose is to "meet filed objections to confirmation of original proposed Chapter 13 Plan," a side-by-side comparison of the Plan and Amended Plan shows substantially similar, if not identical, plan terms.

mortgage foreclosure proceeding initiated by Wilber National Bank ("Wilbur National") through which a foreclosure sale had been scheduled. With respect to the real property, Debtor listed the City of Oneonta (the "City"), Community Bank, the Oneonta City School District ("Oneonta District"), the Town of Davenport ("Davenport"), and other secured creditors on Schedule D, therein indicating that the City, Oneonta District, and Davenport hold statutory liens for past due real property taxes.[4] Debtor listed the Internal Revenue Service ("IRS") and the New York State Department of Taxation and Finance ("NYS") on Schedule E, therein attributing their claims to federal and state income taxes due for tax years 2005, 2006, and 2007. On Schedule F, Debtor listed primarily business debts and a personal guarantee in the aggregate amount of $406,402.00.[5] Warren is listed on Debtor's Schedule H titled "Codebtors" as also being liable on many of the debts listed in Debtor's schedules.

Debtor's Amended Plan contemplated required monthly payments of $1,300.00 for sixty months, a lump sum payment of $580,000.00 to be funded from the proceeds of a future sale of a portion of the Farm and Vacant Properties, curing of $6,050.00 in mortgage arrears owed to Community Bank in connection with the loan collateralizing the Farm Property, payment in full of secured and priority tax claims, and a 100% distribution to general unsecured creditors. The Amended Plan also provided for the avoidance pursuant to § 522(f)(1) of certain judgment liens held by Bassett Medical Center and Roberta Devers-Scott. Attorney Zube filed a motion seeking such relief on January 17, 2013 (ECF No. 43), and the Court granted the same by issuance of a default order on February 11, 2013 (ECF No. 49).

---

[4] Debtor did not list Wilbur National on her Schedule D or Amended Schedule D.
[5] Although none of the debts listed on Debtor's Schedule F were marked as contingent, unliquidated, or disputed, the Court notes that neither the Trustee nor any party in interest objected to Debtor's eligibility under § 109(e) prior to confirmation. *See* 11 U.S.C. § 109(e) (imposing a monetary limitation of less than $360,475.00 in noncontingent, liquidated, unsecured debts on eligibility for individual chapter 13 relief).

On January 25, 2013, counsel for Community Bank filed Supplemental Limited Objections to Debtor's Proposed Amended Plan ("Supplemental Objection," ECF No. 25), requesting only that the Court set December 31, 2013, as the date by which a real estate sale must occur to fund the lump sum payment contemplated by the Amended Plan. On February 7, 2013, Debtor consented to Community Bank's required term, and the Amended Plan was orally confirmed as modified, subject to a reserved carve out for Attorney Zube's fees as approved herein.

Although Attorney Zube did not submit his retainer agreement with Debtor, he did file the statement required by § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b) ("Rule 2016(b) Statement," ECF No. 22) on July 28, 2012. The Rule 2016(b) Statement discloses that Debtor has agreed to pay Attorney Zube $225.00 per hour for legal services rendered in connection with her bankruptcy case, including: (a) "[a]nalysis of [Debtor's] financial situation, and rendering advice and assistance to the client in determining whether to file a petition under Title 11;" (b) "[p]reparation and filing of the petition, schedules, statement of affairs and other documents required by the court, including Chapter 13 [p]lan;" (c) "[r]epresentation of the client at the first meeting of creditors and confirmation hearing;" (d) "[p]reparation and filing of lien avoidance motion with regard to [D]ebtor's homestead exemption;" and (e) "such other services as may be necessary during the course of the case." Debtor's SOFA reports that Debtor paid a $5,000.00 retainer to Attorney Zube on April 13, 2012.

The billing records submitted with the Application for Compensation show that Attorney Zube expended a total of 42.9 hours at an hourly rate of $225.00, resulting in fees of $9,898.10, to reach the point of confirmation in the case. Attorney Zube also incurred costs of $30.00 in connection with filing the amended schedules, $107.80 in connection with serving and noticing

the Plan, and $107.80 in connection with serving and noticing the Amended Plan. Based on Debtor's SOFA, it appears Attorney Zube applied $3,279.50 of the $5,000.00 retainer fee to the balance due for pre-petition services on April 13, 2012, leaving $1,720.50 in escrow.

## DISCUSSION

During the course of the last three years, this Court has spent considerable time examining the question of reasonableness of compensation for attorney representation in chapter 13 bankruptcy cases filed in the Utica Division ("Utica Division") of the United States Bankruptcy Court for the Northern District of New York ("Northern District"). Given the volume of chapter 13 filings and the predominance of consumer bankruptcy practice in the Northern District, this subject is of critical importance to both the bench and bar. Thus, while the essential question before the Court is the reasonableness of Attorney Zube's request for compensation in the case *sub judice*, the Court approaches this Memorandum-Decision and Order as a means of providing clarification as to the Court's general framework for analyzing and awarding attorneys' fees in chapter 13 cases filed in the Utica Division. This approach will both explain the Court's ruling on Attorney Zube's Application for Compensation and set the groundwork for future chapter 13 fee determinations.

### Governing Code Sections

Notwithstanding the Trustee's Affirmation and the United States Trustee's Statement in support of the Application for Compensation, this Court has an independent obligation to examine the propriety of the fees requested. *In re Thorn*, 192 B.R. 52, 55 (Bankr. N.D.N.Y. 1995); *In re Lewis*, 2012 Bankr. LEXIS 5442, at *5 (citing *In re Moukazis*, 479 B.R. 247, 248 (Bankr. E.D.N.Y. 2012)). As set forth herein, the Code and the Federal Rules of Bankruptcy Procedure contemplate and provide for such oversight.

Section 330(a)(4)(B) governs compensation of a debtor's attorney in a chapter 13 case in which the debtor is an individual. It provides that, "the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and other factors set forth in this section." 11 U.S.C. § 330(a)(4)(B). "The use of 'may allow' in the statute makes clear that whether fees are reasonable is a matter of the court's discretion." *In re Moukazis*, 479 B.R. at 248. Subsection (a)(2) permits the court, on its motion or on motion of the United States Trustee or any other party in interest, to exercise such discretion to award compensation that is less than the amount of compensation requested. 11 U.S.C. § 330(a)(2); *see also* Fed. R. Bankr. P. 2017(b) (expressly authorizing the court to analyze and determine whether any payment made to a debtor's attorney pursuant to an agreement, whether such agreement is made before or after the order for relief, is reasonable or excessive). Further, § 329(b) authorizes the court to override the payment terms agreed upon by a debtor and his counsel where such compensation exceeds the reasonable value of services rendered or to be rendered in contemplation of or in connection with the case. 11 U.S.C. § 329(b); *In re Lewis*, 2012 Bankr. LEXIS 5442, at *5.

In assessing the reasonableness of a particular fee request, § 330(a)(3) lists relevant factors for the Court's consideration, including:

(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered, toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)–(F). In addition, as this Court has previously observed, public policy concerns are also implicated when awarding fees. *In re Wesseldine*, 434 B.R. 31, 35 n.3 (quoting *In re Dabney,* 417 B.R. 826, 829 (Bankr. N.D. Ga. 2009) (discussing the need to draw a balance between adequate compensation to attract competent counsel in bankruptcy matters and fair rather than excess compensation to ensure equity to the debtor and creditors.)).

In all cases, the applicant bears the burden of proving the reasonableness of "each dollar for each hour above zero" to be paid from a bankruptcy estate. *In re Wesseldine*, 434 B.R. at 33 n.1 (quoting *Colpitts v. Rogers (In re Rogers)*, 401 B.R. 490, 493–94 (B.A.P. 10th Cir. 2009) (citing *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986)); *In re Herbert*, 2009 Bankr. LEXIS 1860, at *11 (Bankr. E.D.N.Y. July 2, 2009) ("Counsel bears the burden of proof to demonstrate entitlement to the requested fees.") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *In re Bolton*, 43 B.R. 598, 600 (Bankr. E.D.N.Y. 1984)). To satisfy this burden, the applicant must detail the services rendered and the time expended on such services. Fed. R. Bankr. P. 2016(a). The fees charged must in other words be justified with "detailed, specific, itemized documentation." *In re Herbert*, 2009 Bankr. LEXIS 1860, at *13–14 (citing *In re Bennett Funding Group Inc.*, 213 B.R 234, 244 (Bankr. N.D.N.Y. 1997); *In re Poseidon Pools of America, Inc.*, 180 B.R. 718, 729 (Bankr. E.D.N.Y. 1995), *aff'd*, 216 B.R. 98, 100 (E.D.N.Y. 1997)). Billing records must clearly identify each discrete task billed to the estate; indicate the date the task was performed and the precise amount of time spent in increments no greater than one-tenth of an hour; and identify who performed the task, their level of experience, and their hourly rate. *In re Fibermark, Inc.*, 349 B.R. 385, 395 (Bankr. D. Vt. 2006) (citing *In re S.T.N.*

*Enterprises, Inc.*, 70 B.R. 823, 833 (Bankr. D. Vt. 1987)).  As noted years ago by the undersigned's predecessor, retired Chief Judge Stephen D. Gerling, "when the issues are not complex and the process is straightforward, an attorney is expected to exercise 'billing judgment' and is encouraged to reduce its customary fees in appropriate circumstances to reflect a less substantial expenditure of the attorney's time." *In re Thorn*, 192 B.R. at 56 (citing *Hensley*, 461 U.S. at 437; *In re Allen*, Ch. 13 Case No. 93-41865, 1995 WL 548855, at *2–3 (Bankr. S.D. Ga. Sept. 12, 1995)).

**Overview of this Court's Chapter 13 Fee Approach**

Since the passage and enactment of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), which undoubtedly complicated the consumer bankruptcy system, the subject of attorney compensation in chapter 13 cases has achieved high visibility on a national level. *See, e.g.,* Lois R. Lupica, *The Consumer Bankruptcy Fee Study: Final Report*, 20 Am. Bankr. Inst. L. Rev. 17 (2012) [hereinafter *Final Report*]; Bruce M. Price, *"No Look" Attorneys' Fees and the Attorneys Who Are Looking: An Empirical Analysis of Presumptively Approved Attorneys' Fees in Chapter 13 Bankruptcies and a Proposal for Reform*, 20 Am. Bankr. Inst. L. Rev. 291 (2012) [hereinafter *Empirical Analysis*].  Given the additional duties and obligations that BAPCPA placed on consumer attorneys and the overall effect BAPCPA has had on the way consumer bankruptcy is practiced, the balance between ensuring a highly competent, professional, and sustainable consumer bankruptcy bar and protecting debtors and creditors from overly burdensome attorneys' fees has become even harder to strike. *See Final Report* at 37 (noting that attorneys' fees in consumer bankruptcy cases are typically the largest expense associated with a consumer debtor's bankruptcy case, thus subjecting them to a relatively high level of scrutiny).  Additionally, the downturn in the

economic climate and the reduction in consumer bankruptcy case filings in the Northern District in recent years have led to an increased focus on what constitutes reasonable compensation for Utica Division practitioners.

On September 1, 2009, by virtue of Administrative Order 09-07 titled "Debtor Counsel Fees in Chapter 13 Cases Filed in the Utica Division," this Court formally set a presumptive fee through case completion that is the lesser of $3,700.00 or 50% of the amount to be funded through the chapter 13 plan, subject to possible adjustments at three year intervals.[6] The purpose of the presumptive fee is twofold: (1) to allow counsel to avoid the necessity of filing a fee application in each and every chapter 13 case; and (2) to reduce the administrative burden upon the Court of having to review and approve compensation for debtor representation in all chapter 13 cases. In *Wesseldine*, the Court discussed its rational for and upheld the adoption of the presumptive fee. *In re Wesseldine*, 434 B.R. at 37. To set the presumptive fee, the Court employed the "prevailing rationale" or "lodestar" approach of determining what services are customary and necessary, the amount of time reasonably expended to complete such services, and the reasonable hourly rate for those performing the tasks. *Empirical Analysis* at 316. The Court then multiplied the time that should be spent by the rate to arrive at the presumptive fee. As Professor Price observed, this approach can be described as a "pre-calculated lodestar." *Id.* (crediting the Fifth Circuit for the label). The Court has now reviewed Professor Lupica's Final

---

[6] A presumptive fee is a pre-determined, administratively approved fee for the basic services reasonably necessary to properly represent the debtor in a routine case before the bankruptcy court. It should be noted that the presumptive fee set by AO 09-07 defines services broadly and specifically includes service of motions and routine costs associated with the case. The presumptive fee does not include adversary proceedings. The presumptive fee for the Utica Division has not been increased to date. The Court has in recent months, however, informally adopted a standard policy of awarding Chapter 13 debtors' counsel additional compensation for non-routine matters including adversary proceedings and mortgage loan modifications.

Report and is once again assured that the presumptive fee in the Utica Division is in fact reasonable for routine chapter 13 cases.[7]

As such, the presumptive fee provides a useful starting point for the Court's individualized review of fee applications submitted in chapter 13 cases accepted by counsel under the hourly fee arrangement. Given the lack of an exact formula as to how the § 330(a)(3) factors should be weighed, the Court must then exercise its discretion to make an upward or downward adjustment from the presumptive fee based upon the specific facts and circumstances of the case. *See In re McKeeman v. Laughlin*, 236 B.R. 667, 672 (B.A.P. 8th Cir. 1999) ("When . . . a case presents routine chapter 13 matters, the court may review the fees requested in light of fees typically charged, and may reduce the requested fee accordingly. It is not necessary for the court to find that the time spent on any given task was excessive before reducing the award." (citing cases)).

## Application of the Law and Court's Discretion to Debtor's Case

As is permitted but seldom done in the Utica Division, Attorney Zube elected at the outset of this case to utilize the hourly fee option rather than the presumptive fee option set forth in AO 09-07. Accordingly, Attorney Zube's Application for Compensation and billing records are subject to scrutiny under the principles discussed above.

In his Supplemental Application, Attorney Zube advances four main arguments in support of his Application for Compensation. First, he argues that the requested compensation is warranted primarily because the case required extensive factual investigation due to Debtor and Warren's business dealings, real estate holdings, and incomplete documentation. Notably,

---

[7] A comparison of this Court's presumptive fee with those adopted by other bankruptcy courts nationwide places this Court's presumptive fee on the higher end of the spectrum. *See Final Report* at 146–158 (comparing Chapter 13 fees nationwide and finding that post-BAPCPA, the mean Chapter 13 attorney fee increased to $2,564.00); *Empirical Analysis* at 326–346 (setting forth similar findings by Circuit and bankruptcy court within each Circuit).

Attorney Zube contends that it took him a considerable amount of time to obtain relevant documents and records to permit a complete analysis of the business finances which, in turn, impacted his analysis of Debtor's personal financial situation and informed the calculations for Debtor's Amended Plan.  Further, during the course of Attorney Zube's review of Debtor's documentation, he learned that Schuman Moving had been dissolved in 2000 as a corporate entity by the New York State Department of State.  The business had, however, continued to operate and file certain tax returns under the corporate name since that time, causing Attorney Zube to conclude that Debtor and Warren were operating Schuman Moving as a partnership by operation of law.  Debtor and Warren had not filed their personal income tax returns, thus requiring Attorney Zube to enlist a tax professional to bring Debtor's tax status current.  Finally, Attorney Zube was required to review extensive real estate documents, records of judgment liens and other encumbrances, professional valuations, and proofs of claims in order to determine which properties could be sold to properly fund the Amended Plan.

Second, Attorney Zube submits that he has rigorously followed applicable fee guidelines by billing only for legal services rendered.  For example, he indicates that his electronic mail records show a total of two hundred and one exchanges made in connection with the case, but his billing entries selectively include only those communications thought to be billable in nature.  The majority of the exchanges were omitted from his billing records on the ground that they were considered to be clerical and non-billable in nature.

Third, Attorney Zube contends that Debtor had multiple filing options, including electing to file a chapter 11 case as an individual, a joint chapter 11 case for herself and Warren, a chapter

11 case for the newly formed Schuman Moving,[8] or the present chapter 13 case as an individual. Attorney Zube submits that the chapter 11 options were administratively cost prohibitive, and, by comparison, the chapter 13 filing will achieve the same consequences at equal or lesser expense.

Fourth, Attorney Zube argues that the Amended Plan will protect Debtor's financial and real property interests, which the foreclosure action otherwise would have destroyed. In addition, confirmation of the Amended Plan will, if completed by Debtor, result in all creditors receiving full payment of their claims.

The Court has carefully considered each of Attorney Zube's proffered justifications for the fee award requested in this case. Preliminarily, the Court finds Attorney Zube's hourly rate of $225.00 is reasonable in light of his number of years of experience, thirty-nine to be exact, and his demonstrated skill. This rate is also competitively priced in the local marketplace. In addition, the overall services rendered benefitted Debtor as confirmation has been achieved. The Court finds the hours expended by Attorney Zube, however, are excessive based upon the particular facts and circumstances of this case. Further, Attorney Zube's billing records are unduly vague and difficult to decipher. Focusing on three of the six factors enumerated in § 330(a)(3) in particular–the time spent, the quality of the billing records, and whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed–the Court concludes that a significant reduction from the amount requested by Attorney Zube in the Application for Compensation is warranted.

---

[8] The New York State Department of State, Division of Corporations' public records show that Schuman Moving filed as a domestic limited liability company on June 18, 2012. FED. R. CIV. P. 201; *See also* New York State Corporation & Business Entity Database available at http://www.dos.ny.gov/corps/bus_entity_search.html.

Notably, the Application for Compensation seeks $9,652.50 for services through and including the date of confirmation for a sixty-month case. To date, based upon the Court's categorization of Attorney Zube's time records, he has spent 13.5 hours conferring or corresponding with Debtor, 4.4 hours reviewing documentation, 14.1 hours preparing schedules, the SOFA, and other required documents, computing plan figures based upon filed proofs of claim and broker price opinions, and drafting the Plan and Amended Plan, 2.5 hours reviewing and responding to correspondence from creditors, 3.2 hours corresponding with the tax professional, 0.7 hours corresponding with the Trustee, 4 hours related to motion practice and appearances, and 0.5 hours preparing the Application for Compensation. The itemized entries lack sufficient detail and description. For example, several time entries simply state "conf. w/client," "con w/clt for update info," "phone w/clt re add'l info needed," "corresp to clt via email," and the like. The time records alone thus make it impossible for the Court to determine whether the lump sum allocated time for each task was reasonable or whether unnecessary duplication of services occurred.

After reviewing the docket, schedules, SOFA, Plan, Amended Plan, and motions, the time spent counseling Debtor, reviewing documentation, and preparing necessary filings appears to be excessive if not somewhat redundant. Attorney Zube, however, asserted that the time spent was reasonable given the complexity of Debtor's financial situation. In the Court's view, measuring this case against other chapter 13 cases that have come before it, the Court fails to see how this case required exponentially more effort or expertise than that required in a typical chapter 13 case. Consistent with Attorney Zube's billing records, the docket in this case shows limited, routine, and unopposed motion practice, few objections to confirmation, and a generally cooperative secured mortgagee. Hence, it appears that while the case may have been factually

complex at the outset given the tax issues involved, it has progressed procedurally with few, if any, unexpected hurdles. On its face, a review of the docket shows that Debtor's case followed a standardized and routine course to plan confirmation under chapter 13 of the Code.

Turning to Debtor's election to file as an individual under chapter 13 rather than under chapter 11 of the Code, it is of no bearing that a chapter 11 filing presumably would have garnered a higher fee award. As § 330(a)(4)(B) directs, the Court must evaluate the Application for Compensation within the confines of the chapter in which the case the filed. 11 U.S.C. § 330(a)(4)(B). As the Honorable Henry J. Boroff, Bankruptcy Judge for the District of Massachusetts, aptly observed,

> Measuring proper compensation in Chapter 13 cases presents special challenges. Section 330(a)(4)(B) specifically directs the Court's attention to the welfare of the debtor rather than that of the bankruptcy estate. Furthermore, the economics of practice under Chapter 13 is different from those under Chapters 7 or 11. . . . In Chapter 11 cases, counsel to the debtor in possession may be called upon to perform extensive services, but can be paid from funds of the estate. But in Chapter 13, while the amount of available funds to pay for services may be small, the debtor's needs may be extensive. Proper representation of a Chapter 13 debtor requires the time and patience to identify the source of the debtor's financial difficulty in order to draft a reorganization plan that best addresses the debtor's problems. Once drafted, the reorganization plan may have to be negotiated with creditors and the Chapter 13 trustee, and may have to be amended, sometimes more than one time. Disputes as to the propriety of the plan's terms may spill out into the courtroom; and, once disputes are resolved, further plan modification may be required in order to achieve confirmation. And after all of that, the debtor may default and require further legal assistance. Plan defaults, as well as defaults in the monthly payment of home mortgages, are commonplace.
>
> The resources available to fund the typical Chapter 13 case come from the Chapter 13 debtor, an individual with a self-evident inability to raise substantial funds. The economics of a Chapter 13 practice therefore require that counsel to the Chapter 13 debtor use appropriate techniques in order to reduce the costs of doing business.

*In re Claudio*, 459 B.R. 500, 512–13 (Bankr. D. Mass. 2011) (quoting *In re LaFrance*, 311 B.R. 1, 19–22 (Bankr. D. Mass. 2004) (internal citations omitted)). Furthermore, an attorney's

exercise of proper billing judgment is even more critical in chapter 13 practice than it is in chapter 11 practice.

For many of the same reasons articulated by Judge Boroff and for the reasons articulated by the Court herein, including that the Court has an independent judicial responsibility to review the fees of professionals, the Court is also unpersuaded that either the client's willingness to pay the agreed upon amount or the 100% distribution to unsecured nonpriority creditors bears any impact on its fee determination. *See In re McKeeman*, 236 B.R. at 673 (Finding no abuse in the bankruptcy court's decision to reduce fees even where counsel's clients may have been willing to pay those fees because "[i]n Chapter 13 cases, the relevant inquiry is the value of the services to the debtor."); *see also Final Report* at 91 (Finding that "[t]here was no statistically significant relationship between attorney fees and the ratio of distributions to unsecured claims."); *In re Lewis*, 2012 Bankr. LEXIS 5442, at *2 (reducing counsel's compensation to be awarded in a confirmed chapter 13 surplus funds case notwithstanding a 100% dividend).

## CONCLUSION

As Professor Lupica observed, "the consumer bankruptcy system is exceptionally complex, and only more so since BAPCPA's enactment. . . . It takes more skill and experience to responsibly and professionally represent consumer debtors–especially in this economic climate–than it used to." *Fee Study* at 121–22. Accordingly, it stands to reason as this Court previously recognized that chapter 13 cases are far more likely to succeed when debtors are represented by competent counsel. *In re Wesseldine*, 434 B.R. at 39–40. The Northern District as a whole is fortunate to have a highly reputable, seasoned, proficient, and dedicated consumer bar. The high caliber and value of the Utica Division's consumer bankruptcy practitioners is not lost on this Court.

Allowing the compensation requested by Attorney Zube in this case, however, borrowing the words of a sister bankruptcy court, would be "impermissibly generous" and "set bad precedent." *In re Moukazis*, 479 B.R. at 253. In addition to the interests of counsel, the Court must also consider the interests of debtors, creditors, and the purposes of the Code. *Id.* Professional fee awards are the result of a balancing act, and the pendulum in this case swings heavily in favor of a reduction in the amount requested by Attorney Zube in the Application for Compensation. While additional fees over and above the presumptive fee are warranted in this case because of the tax and business aspects involved, compensation of $9,652.50 for pre-confirmation services under the facts and circumstances of this case would be excessive. After careful consideration of the Application for Compensation and the relevant statutory factors, the Court finds that a reasonable amount of interim compensation for services rendered through the date of confirmation in this case is $5,200.00.

For the reasons stated herein, it is hereby

ORDERED, that the Application for Compensation is allowed in the sum of $5,200.00 in compensation and reimbursement of expenses; and it is further

ORDERED, that the award of $5,200.00 is inclusive of the costs requested of $245.60; and it is further

ORDERED, that Attorney Zube may apply the balance of the retained funds of $1,720.50 to satisfy the award; and it is further

ORDERED, that the Trustee may include the outstanding amount due to Attorney Zube as an administrative expense claim in the proposed Order of Confirmation.

IT IS SO ORDERED.

Dated at Utica, New York
this 22nd of March 2013        /s/Diane Davis_____
                               Hon. Diane Davis
                               U.S. Bankruptcy Judge